ORIGINAL

LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
JESSICA F.CRUZ
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, GU 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for the United States

**FILED**
**DISTRICT COURT OF GUAM**

AUG 1 5 2008

**JEANNE G. QUINATA**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| CASSANDRA CHAU TRUONG, Administratrix of the Estate of ROLAND ANTHONY BOUDREAU, deceased, Plaintiff, vs. UNITED STATES OF AMERICA, Defendant. | Case No.: 06-00022 **MOTION TO STAY PROCEEDINGS** |

The United States hereby moves this Court to stay the proceedings in the above entitled case to allow for a decision on local law as it applies to the April 2, 2005, accident which gave rise to this cause of action. The Plaintiff in this case had earlier filed another Complaint in the local court against a different defendant, Ambros Inc., seeking money damages for the same accident. Truong v. Aioi Insurance Co., CV 1082-06 (Superior Court of Guam) (Aioi is the insurance company for Ambros) (hereinafter the Aioi case); *See also* Truong v. Aioi, Complaint, attached as "Exhibit 1". That case presently has a pending Motion For Summary Judgment which will define the tort law of Guam as it applies to this accident, clarify the responsibilities of

1

the parties and assist with findings about the actions which caused the accident. *See*, Memorandum in Support of Summary Judgment, Aioi case, attached as "Exhibit 2", (hereinafter the "Motion"). [1]

This federal case is filed under the Federal Tort Claims Act (FTCA). The FTCA is a limited waiver of immunity that requires the federal court to apply the law of Guam in determining whether a federal employee, acting in his official capacity, was negligent such that his act proximately caused the injury alleged. 28 U.S.C. § 2679(b). Under the FTCA, Guam's law is necessary to apply in the accident that occurred at Polaris Point and will be defined and clarified by the decision in the Motion now pending in the Aioi case. A Stay will serve the parties, judicial economy and the conservation of litigation resources.

In addition, the outcome of that motion will mark a phase in the litigation when all the parties will be able to realistically enter into informed, universal settlement discussions.

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706, 117 S.Ct. 1636 (1997). Because it will assist the parties and the Court in the fair and accurate application of Guam law to the accident in question in this case, the Court should stay this case pending the local court decision on the pending Motion.

/

/

---

[1] The Motion was argued in Guam's court on November 14, 2007. During the first week of August, 2008, in discussions with the Plaintiff, it was pointed out that the pending Motion was critical to any efforts to resolve this case. That prompted the US to seek and obtain full copies of the Motion, Opposition, Reply and hearing transcript. Those copies are attached.

## I. GENESIS OF THE CASE AND THE PENDING MOTION BEFORE THE GUAM COURT

On April 2, 2005, just after 7:00 p.m., Cassandra Truong was driving a golf cart across a field, on Navy property at Polaris Point, with her husband hanging on to the back of the cart on a platform designed to carry golf clubs, not people. Both had been drinking during the day. Someone alerted her that he was no longer on the back and she stopped her cart and found him several feet back lying on a concrete area that she had just driven over. He was transported to the hospital and died the following day.

Initially the Plaintiff, Ms. Truong, submitted a sworn statement to Naval investigators that her husband had jumped off the back of the cart to retrieve a fallen zori (sandal), lost his balance and ended up face down on the ground. The hospital, as part of his emergency medical care, determined that his Blood Alcohol Content (BAC) was .2258, or approximately three times the legal limit.

Later, Ms. Truong claimed that a hole in the concrete slab had caused the decedent to be thrown off the cart. Her previously sworn statement to Naval investigators contained no such complaint. She sued the United States in this Court claiming that the Navy's negligence was the proximate cause of the accident. In depositions, she denied her own negligence and stated that the Navy was negligent in allowing her, an admitted golfer with admitted experience driving golf

3

carts, to operate the cart without training and for having an irregular surface that included what she described as a "hole".

In the Superior Court of Guam, Ms. Truong also sued her employer, Ambros Inc., via their insurance company, Aioi Insurance. She was working for Ambros at the time of the accident and had organized the concert on the Navy property for Ambros. The concert had ended approximately two hours prior to the accident. Ambros is a beer distribution company that had permission to hold the concert (where the popular band, "Three Doors Down" had performed that day) on the Navy property. Plaintiff, Ms. Truong, is the Marketing Manager for Ambros.

## A.  Whether Plaintiff's Admitted Negligence Precludes Summary Judgment

The *Aioi* case was filed by Ms. Truong in the Superior Court of Guam. *See* Complaint, Exhibit 1. To prove negligence on the part of her employer, she has sought to show, in the local court, that she, herself, acted negligently, thus making the employer negligent on the theory of *respondeat superior*. Aioi's Motion, relying in part on the depositions in this federal case, has highlighted Ms. Truong's obvious conflict by alleging in her complaint that Ambros is liable to her on a *respondeat superior* theory based on her own negligence, while simultaneously claiming in her sworn depositions that she was not negligent. *See* Motion For Summary Judgment, attached as "Exhibit 2", page 3 (hereinafter the "Motion"). On the *respondeat superior* theory, the allegedly negligent employer, Ambros, was acting solely through its employee, Ms. Truong, in the events that led to the unfortunate accident. Under Guam law, if Ms. Truong was not negligent her *respondeat superior* tort claim against her employer fails as a matter of law.

4

Notwithstanding Ms. Truong's denials in the sworn depositions, her attorneys have argued, in the local case, that her negligent actions proximately caused her husband's death and therefore the employer is liable. *See* Transcription of Guam Court Hearing Before the Honorable Judge Arthur R. Barcinas, November 14, 2007, attached as "Exhibit 3", (hereinafter, the "Transcript"), pages 16 -20. At the hearing, <u>Plaintiff's</u> attorney specified Plaintiff's negligent acts: she was drinking (while at work), she initially put six people on the golf cart after being told not to, she placed people on the back of the cart, and drove on a bumpy road after it turned dark. In saying she was not negligent during the depositions, according to her attorney, she is just trying to deny fault in her husband's death. Transcript, Exhibit 3, at 19. As to the question of how the Plaintiff could still say, in depositions, that she did nothing wrong, while at the same time claim she was negligent while acting as an agent for Ambros, her attorney said, "I mean, what is she going to say?" Transcript at 19.

In her written Opposition to the Motion, plaintiff states that, "After the concert ended, Mr. Boudreau [the decedant] was invited to be transported to his vehicle by an Ambros/Shimbros employee", referring, of course, to the wife (who is also the Plaintiff and the marketing manager for Ambros). *See,* Plaintiff's Opposition to Defendant's Motion For Summary Judgment, page 2, attached as "Exhibit 4" (hereinafter, the "Opposition"). In the Opposition the Plaintiff also states, "Ambros Marketing Manager was also a negligent party and the proximate cause of the concert goer's death." Opposition, page 10. Again, they are speaking of the Plaintiff, the Ambros marketing manager, Ms. Truong.

Clarity on the application of Guam's law of proximate cause to Ms. Truong's admitted negligence, would be most helpful in this case. Without a Stay the risk of inconsistent rulings is great.

**B.** **Whether Plaintiff's Admitted Negligence Adds To Decedent's Negligence Under**

**Contributory Negligence (50% Rule)**

The Motion raises another issue of Guam law that is essential to the federal suit.  Aioi points out the undisputed fact that Guam follows a contributory negligence statute, 18 G.C.A. § 90108, which states that if the negligence of **"any person or his legal representative"** is "as great as" the defendant's negligence, there can be no recovery.   In the Aioi action, the Superior Court of Guam will ultimately decide whether, under Guam law, the percentage of Ms. Truong's negligence must be combined with the percentage of the decedent's negligence in the determination of whether Ms. Truong is able to recover under 18 G.C.A. § 90108.  *See* Reply Memorandum in Support of Motion For Summary Judgment, page 12, attached as "Exhibit 5" (hereinafter the "Reply").  *See also,* Duenas v. Yama's Co, Inc, 1991 WL 255834 (D.Guam A.D.) (the Appellate Division found that under Guam's Comparative Negligence law, Plaintiff's intoxication of .254, at the time of the accident, was such that he could not recover). [2]

If, as Plaintiff herself argues, her negligence was the major cause of his death, and thus her negligence is over 50% (or just greater than the defendant's) there is no recovery under Guam law.   If, in fact, Guam law requires that her negligence be added to that of her severely inebriated husband's, then it is overwhelmingly likely that it will be far greater than 50% and there will be no recovery under Guam law.  This is an essential area of Guam law.  This Court's application of Guam's law of contributory negligence (which is actually a modified comparative negligence) will be greatly assisted by the outcome of the pending Motion.   Without a decision from the Guam Superior Court on the issue, the Court will be required to "predict" what the law

---

[2] The Court took the blood alcohol content at the time of the testing and interpolated that back to the time of the accident.  In the instant case, decedent's alcohol content at the time of testing was .2258.

6

is on Guam. *See, e.g.,* Mem'l Hermann Healthcare Sys. v. Eurocopter Deutschland, 524 F.3d 676, 678 (5th Cir. Tex. 2008) (Fifth circuit refused to unilaterally predict that the Texas Supreme Court would adopt an exception to Texas law on economic loss rule). In this regard, the Court's task is to "attempt to predict state law, not to create or modify it." Id. Again, there is a substantial risk of an inconsistent ruling in the absence of a Stay.

### C.    Whether Guam Has "Sponsor Liability"

In the Motion, Aioi points out that Guam has not adopted, by statute or otherwise, a "sponsor liability" doctrine, akin to a "dram shop liability" doctrine, and reiterates that negligence must still be proven  against a sponsor.  *See* Transcript, Exhibit 3, at page 11 (Aioi) and page 21 -25 (Plaintiff) and again on page 33 (Aioi); *See also*, Reply, Exhibit 5, at pages 5 -7. The full extent of any other party's negligence that may have contributed to Plaintiff's placement of her inebriated husband on the back of her golf cart, would be essential to this Court's apportionment of negligence in the accident. Sponsorship liability is a question of law and is one of first impression now pending in the Motion.

### D.    Guam's Application Of The "Open & Obvious" Doctrine

The state of Guam law as to "open and obvious" conditions, such as the irregular surface that Plaintiff had driven the golf cart over all day prior to the accident, is also at issue in the Motion. Reply, Exhibit 5, at pages 14-15.    The law of Guam on that topic will be central to Plaintiff's claim in this Court.   If the Guam Superior Court accepts that the Navy, via Ambros, did tell the Plaintiff not to let people hang on to the back of the cart, and that there was in fact a sign on the cart stating the same, then Plaintiff could be left only with the thin claim that the irregular surface, including the "hole", was the proximate cause of the decedent's jumping or

7

falling from the cart. If the argument is accepted (and the Guam Court somehow overlooks the overwhelming negligence of the Plaintiff and the decedent) the Guam Court would have to apply Guam law on such an "open and obvious" condition. This Federal Court will analyze that law along with the testimony of the accident reconstruction engineer, Frank Perez, who will testify in both courts that there were no conditions, "holes" or otherwise, that would have caused someone to be "thrown" from a golf cart. He will testify in this Court and the local court that there were no unsafe conditions on the Navy property. The accident was purely caused by Plaintiff and decedent's negligence in getting severely intoxicated and hanging on to the back of a slow moving golf cart. Again, it would conserve judicial resources, and serve to insure that the correct law is applied in this federal action, to wait for the Guam court to rule on the issue.

**F. <u>Summary of Uncontested Critical Issues Before The Guam Court</u>**

In the Summary Judgment Motion in the Superior Court, additional issues were raised by Aioi as grounds for judgment:

1. Ambros had no duty to train Ms. Truong how to safely operate a golf cart because it is undisputed that she already knew how to drive a golf cart.

2. Ambros had no duty to warn or train Ms. Truong not to drive a golf cart through potholes because Ms. Truong admittedly knew the attendant risks are what she described as "common sense".

3. Ambros had no duty to warn or train Ms. Truong how to drive golf cart because there is no evidence that golf carts are inherently dangerous.

8

4. Ambros had no duty to warn or train Mr. Truong because Ambros had no knowledge of any dangerous condition at Polaris Point.

5. Ambros breached no duty of care it may have owed to Ms. Truong because she *was* provided with adequate warning.

All of these issues appear to be uncontested by the Plaintiff in the Motion pleadings. A ruling on any of these factors would be of assistance to the Court in this case. For each of these issues, the name of Ambros will be substituted by the United States in the federal case. For example, did the United States have a duty to warn about "potholes" in the field? The United States and Ambros inspected the area prior to the event. Events there have involved tens of thousands of persons who have used the field for concerts, Fourth of July celebrations and more. There has never been an accident or report of a hazard for the area that Plaintiff claims is unsafe. The United States will have its accident reconstruction engineer testify that he found no unsafe conditions, -even when using golf carts at **full** speed (Plaintiff has testified that she was going slow).

A stay would allow for a ruling on these issues, greatly save judicial resources and avoid the possible danger of inconsistent rulings.

## II. LEGAL STANDARD FOR A STAY

A stay of proceedings is a decision that rests in the discretion of the Court. Clinton v. Jones, 520 U.S. 681, 706, 117 S.Ct. 1636 (1997). In making its determination, the Court must balance the competing interests of the judicial system and of the parties. In the Clinton case the Court initially allowed for a stay of a civil action until the President of the United States

completed his term of office.   The Supreme Court found that the court must weigh factors such as any prejudice to the parties from the Stay, whether the Stay will be immoderate, and the potential harm of scheduling the trial promptly, without the Stay.  <u>Clinton</u>, 520 U.S. at 707-708.

The <u>Clinton</u> decision relied on the case of <u>Landis v. North American Co.</u>, 299 U.S. 248 (1936).   That Court emphasized the judgment of the court: "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  <u>Landis</u>, 299 U.S. at 254-55.

Federal Courts frequently stay cases where the same issues are being adjudicated in a state action.  <u>Butler v. Judge of United States District Court</u>, 116 F.2d 1013 (9th Cir. 1941).   In <u>Butler</u> both the federal case and the state case turned on the same issue of the proper interpretation of a contract under state law.   The court stayed the federal case in order to benefit from the state court's findings.

Some courts, outside the Ninth Circuit, have gone so far as to rule that it is the Federal court's duty to stay proceedings when suit is pending in the state court, and the state questions can be conveniently and authoritatively answered.  <u>Crawford v. Seaboard Coast Line Railroad Company</u>, 286 F.Supp. 556, 557 (S.D. Ga. 1968).

### III. A STAY WILL BENEFIT THE COURT

A stay, to allow for the law to be developed in the Guam Court, will benefit this Federal Court.  In <u>Poisson v. United States</u> where a juror in a federal courthouse sued because of a slip

and fall, alleging the negligence of a contractor for maintenance of the courthouse, the court stayed the federal proceedings until the resolution of the proceedings in the state court that were directly against the contractor.   696 F.Supp. 1141 (E.D. Mich. 1988).   In the instant case the Plaintiff/ driver of the golf cart is suing, in Guam's local court, the insurance company over the accident (blaming herself as the agent of her employer), and is suing the United States in Federal Court, blaming the United States for the accident.   A stay pending the resolution of the Motion, that is directed against her employer, will clarify issues and conserve resources.

The decision on the Motion may trigger helpful issues of collateral estoppel.   The preclusion of issues under collateral estoppel will apply when five elements are present:  (1) the issue sought to be precluded from re-litigation must be identical to that decided in a former proceeding; (2) the issue must have been actually litigated in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privy with, the party to the former proceeding. Villaneuva v. City Trust Bank, 2002 WL 33920256, page 3 (N.Marianas Islands), 6 N.M.I. 346.

If the Plaintiff prevails in her argument before the Guam Superior Court that her negligence was the cause of the death of her husband, collateral estoppel should preclude any attempt by Plaintiff to then deny her negligence in the Federal Court. D'Ambra v. United States, 396 F.Supp. 1180. 1181 (D. R.I. 1973), aff'd, 578 F.2d 275 (1st Cir. 1975) (collateral estoppel applies where the defendant has already enjoyed full opportunity to litigate the issues). Collateral estoppel may apply to many of the critical issues in the Guam Court. These issues can include whether there was a duty to train in driving a golf cart, whether risks were "common

11

sense", whether there was no evidence of golf carts being dangerous, whether no hazardous conditions existed, and whether there was adequate warning. *See supra*, Subsection F.

The plaintiff is making issue claims in the Guam court that are refuted by the claims she is making in the federal case. Plaintiff is showing one face to the Guam court and another, opposite face to the Federal Court. The risk of inconsistent rulings, due to plaintiff's duplicity, can be easily mitigated by a stay.

The Motion in Guam's Superior Court seeks to clarify the duties of the employer, if any, and the United States, if any, the Plaintiff, and the severely inebriated decedent. This information is helpful and necessary to this Court's deliberation of the same accident involving the same Plaintiff and the same decedent.

There is no prejudice to the Plaintiff in granting the Stay. In fact, <u>all</u> of the parties will benefit from the clarification about Guam's tort law and from the first impression issues pending in the Motion. Plaintiff will, however, be frustrated in her ability to show a different face to the Guam court than the one she is presenting to the Federal Court.

And, again, all the parties, including both defendants that Plaintiff accuses as having caused the accident, will be able to **realistically** assess a possible universal settlement <u>only</u> <u>after</u> a decision on the pending Motion.

The plaintiff in the case has filed actions against two different defendants, alleging in each case that the defendant in that case caused the accident. The issues in the local court, and the facts alleged, illuminate the law and facts that must be applied in this Court. The Federal

Tort Claims Act requires the application of Guam law. 28 U.S.C. § 1346 (b). That law is at issue in the pending Motion and both the parties and the Court will benefit from a stay.

/

/

## IV. CONCLUSION

It would serve the interests of the parties and the Court to allow the Guam court to clarify Guam's law before this Court applies that law. Little would be lost by granting a Stay and much will be gained.

WHEREFORE, the United States respectfully requests that this Court grant a Stay in this case until the resolution of the pending Motion in the Guam Court in the Plaintiff's other case.

So submitted this _____ day of August, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI


MIKEL W. SCHWAB
Assistant U.S. Attorney
JESSICA F. CRUZ
Assistant U.S. Attorney

13

GOVERNMENT
EXHIBIT
1

**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÁTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4
FACSIMILE:  (671) 472-2601

*Attorneys for the Estate of Roland
Anthony Boudreau, Deceased*

IN THE SUPERIOR COURT OF GUAM

**CV** 1 082-06

| | |
|---|---|
| CASSANDRA CHAU TRUONG, Administratrix of the Estate of ROLAND ANTHONY BOUDREAU, deceased, <br><br> Plaintiff, <br><br> vs. <br><br> AIOI INSURANCE COMPANY, LTD., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL CASE NO. CV_____

**COMPLAINT FOR DAMAGES**
**FOR WRONGFUL DEATH**

1.  This Court has jurisdiction of this action pursuant to 7 G.C.A. § 3105, *et seq.*

2.  Plaintiff is the duly appointed, qualified and acting Personal Representative of the *Estate of Roland Anthony Boudreau, Deceased*, having been appointed by the Superior Court of Guam in Probate Case No. PR0151-05.

3.  Plaintiff brings this action as specified in § 377 of the Guam Code of Civil Procedure (now codified at 7 G.C.A. § 12109) on behalf of the surviving heirs of Roland Anthony Boudreau, deceased (hereinafter referred to as the "Decedent").

1    N1K    4.    The only heirs at law of the Decedent, and their relationships to the Decedent,

2    are as follows:

3         a.    Cassandra Chau Truong, spouse; and

4         b.    Joshua Boudreau Chapman, son

5         5.    At all times herein mentioned, there was in effect a policy of insurance, by

6    the terms of which Defendant AIOI Insurance Company, Ltd. agreed to pay any loss by reason of

7    liability imposed on Ambros, Inc., d.b.a. Shimbros Productions ("Shimbros"), for damages because

8    of injuries to any persons as a result of any negligence by Shimbros, with respect to all damages,

9    including damages for care and loss of service arising out of bodily injury, including death at any

10   time resulting therefrom sustained by one or more persons, which may occur to any person during

11   attendance at concerts sponsored by Shimbros.  Plaintiff brings this action against Defendant

12   pursuant to Guam's direct action statute, 22 G.C.A. § 18305.

13        6.    On or about April 2, 2005, the Decedent attended a *Three Doors Down*

14   concert at *Polaris Point* in Guam, which concert was sponsored by Shimbros.

15        7.    The Decedent was an invited guest of the VIP tour marketed by Shimbros,

16   which began at the *Hard Rock Café* in Guam..

17        8.    Shimbros provided Decedent VIP bus transportation from the pre-concert

18   party at the *Hard Rock Café* Guam down to *Polaris Point*.

19        9.    Shimbros utilized golf carts to transport the VIP guests around the *Polaris

20   Point* premises.

21        10.   At about 7:00 o'clock p.m. on April 2, 2005, one of the employees of

22   Shimbros was transporting Decedent and another employee of Shimbros in a golf cart to Decedent's

23   car located at *Polaris Point* so that he could drive home. The Decedent was standing on the rear part

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE (671) 477-9891-4

-2-

1  of the golf cart where golf bags are ordinarily carried.

2          11.     During the transportation of the Decedent, the golf cart hit a bump at *Polaris*

3  *Point,* which caused the Decedent to fall from the golf cart, where he violently struck his head on

4  the pavement and was severely injured.

5          12.     The Decedent was taken to the U.S. Naval Hospital on Guam on the same day,

6  but died one day later, on April 3, 2005 from the injuries received from said accident.

7          13.     Shimbros, and its agents and employees, negligently and carelessly allowed

              (supplied by MWR)

8  its employees to operate said golf carts without proper instructions and negligently operated the golf

9  cart, thereby causing the Decedent to fall from the golf cart and, thereby proximately causing the

10 Decedent's death.

11         14.     As a direct and proximate result of said negligence, and the injuries caused

12 thereby, Roland Anthony Boudreau died.

13         15.     Immediately prior to his death, the Decedent was thirty-six (36) years old, was

14 married to Cassandra Chau Truong, and had one minor child and had a life expectancy of forty-one

15 (41) more years. The Decedent was a faithful and dutiful husband to his wife, and was a dutiful

16 father to his only child, Joshua Boudreau Chapman.

17         16.     As a proximate result of the negligence of Shimbros Productions, and its

18 agents, employees and servants, and the death of said Decedent, the Decedent's wife and son have

19 been deprived of the consortium, society, comfort, protection, services and support, parental advice,

20 care, education and guidance of the Decedent, all to their damage in the sum of One Million Dollars

21 ($1,000,000).

22 ///

23 ///

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891/-4

WHEREFORE, Plaintiff prays for judgment as follows:

1.  For damages in the sum of One Million Dollars ($1,000,000);

2.  For attorney's fees;

3.  For costs of suit herein incurred; and

4.  For such other and further relief as the Court may deem proper.

DATED at Hagåtña, Guam, on August 29, 2006.

TEKER TORRES & TEKER, P.C.

By _____
LAWRENCE J. TEKER, ESQ., Attorneys for
the Estate of Roland Anthony Boudreau, Deceased

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff demands a trial by jury of twelve (12) persons in this action.

DATED at Hagåtña, Guam, on August 29, 2006.

TEKER TORRES & TEKER, P.C.

By _____
LAWRENCE J. TEKER, ESQ., Attorneys for
the Estate of Roland Anthony Boudreau, Deceased

LJT:cs
PLDGS:TRUONG, CASSANDRA-INSURANCE:001

Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone (671) 646-1222
Facsimile  (671) 646-1223

Attorneys for Defendant

IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| CASSANDRA CHAU TROUNG,<br>Administratrix of the Estate of ROLAND<br>ANTHONY BOUDREAU, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>AIOI INSURANCE COMPANY, LTD.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL CASE NO. CV1082-06<br><br><br><br><br><br>**MEMORANDUM IN SUPPORT OF<br>MOTION FOR SUMMARY JUDGMENT** |

Defendant Aioi Insurance Company, Ltd. ("Aioi"), the liability insurer for Ambros, Inc., submits the following memorandum in support of the accompanying motion for summary judgment.

## I.    UNDISPUTED FACTS.

On April 2, 2005, after the "Three Doors Down" concert at Polaris Point on Naval Station, Roland Boudreau fell or jumped off the back of a golf cart being driven by his wife, Plaintiff Cassandra Truong, struck his head on the pavement, and died at Naval Hospital the next day. Her husband was standing on the back of the cart because the passenger seat was occupied by Ms. Truong's friend. Deposition of Cassandra Truong ("Truong Depo."), p. 42, lines 16-24.

GOVERNMENT
EXHIBIT
2

Another person was riding in the back of the cart with Ms. Truong's husband, for a total of four (4) passengers, two seated, and two hanging on to vertical poles on the back of the cart. Id. The back of the cart is designed to carry golf clubs, not people. Truong Depo., p. 34, lines 21-28; p. 35, lines 1-9. The golf car being driving by Ms. Truong had been loaned to Ambros by the Navy for use at the concert. Declaration of Pierre ("Tim") Aguon, ¶ 4 ("Aguon Dec."). Ms. Truong was, and still is, Ambros' Marketing Manager. Truong Depo., p. 10, lines 10-11. In this lawsuit, Ms. Truong claims that Ambros is to blame for her husband's death.

At her recent March 27, 2007 deposition, Ms. Truong was asked how the accident happened. She replied, "Because we hit a pothole and he fell off." Truong Depo., p. 27, line 1. Asked whether she held Ambros responsible for this, Ms. Truong said she could think of two (2) reasons for holding Ambros liable. First, Ambros "could have talked to the Navy to pour some cement to fix it or they could have roped off that cement area." Truong Depo., p. 21, lines 6-14. Second, "we never got instructions on how to drive it or whatnot ... nobody briefed us and said, you know, the grounds are unleveled (sic), you need to be careful and things like that. There was no safety briefing or anything." Truong Depo., p. 21, lines 5-14. Additionally, "I'm just saying there should have been some kind of safety briefing on how to operate the golf cart, how to drive it, how to make sure that – I mean, are passengers allowed on the golf cart, you know, things like that." Truong Depo., p. 32, lines 8-11)[1]

On May 16, 2005, only six (6) weeks after the accident, Ms. Truong sat down with a Navy investigator to give a detailed statement about the incident. That statement is Exhibit 16 to

---

[1] At her deposition, Ms. Truong was only able to point to two grounds for Ambros' alleged negligence. These were (1) condition of Polaris Point, and (2) Ambros' alleged failure to train her how to safely operate a golf cart. She was given the opportunity to think of other reasons, but she was unable to. "Q: What else did Ambros do or not do that you think caused or contributed to your husband's death? A: Beside the cart and making sure the grounds were leveled? Q: Yeah. A: That's it." Truong Depo., p. 25, lines 21-25; p. 26, line 1.

2

the transcript of Ms. Truong's sworn deposition ("Truong Depo."), a copy of which is attached to the accompanying Declaration of Tim Roberts, Esq. ("Roberts Dec.") as Exhibit 1 and incorporated herein by this reference. Ms. Truong reaffirmed at her deposition in this case that everything in her sworn statement to the Navy was true. Truong Depo., p. 29, line 25, p. 30, line 1. She also testified that she knew it was important to tell the truth to the Navy, to remember as many details as possible, and to not leave anything out. Truong Depo., p. 29. After the sworn statement was typed, Ms. Truong was given the opportunity to make any necessary handwritten changes, which she did, after which she also placed her initials before and after each paragraph of the statement to signify its accuracy. Truong Depo., pp. 28-30.

At no place in Ms. Truong's sworn statement to the Navy is there any mention of potholes or inadequate golf cart training. Instead, Ms. Truong swore to the Navy that "it appeared to me that one of his slippers fell off while Roland was on the cart and he jumped off to get it and fell and (hit) his head." Truong Depo., Exhibit 16.

There is another aspect to this case, one that is not necessarily relevant to this motion, but which would certainly be enormously relevant in the event a trial is necessary. When Ms. Truong's husband was admitted to Naval Hospital after the accident, his Blood Alcohol Level was a staggering .2258, nearly three (3) times the legal limit for driving an automobile. Declaration of Emmanuel Cruz; ¶¶ 2-4; Declaration of Dr. Aurelio Espinola, ¶¶ 3-7.

Ms. Truong has not sued Ambros. Instead, she has sued Ambros' liability insurer, Aioi.

3

## II. LAW AND ARGUMENT.

### A. If Ms. Truong Was Not Negligent, Ambros Has No Liability.

At her deposition, Ms. Truong insisted that she was not negligent in any way and that nothing she did, or didn't do, contributed to her husband's death. .

I see only two ways for Ambros (and therefore Aioi) to be found liable in the case: (1) independent negligence (negligent golf cart training, negligent entrustment of a golf cart, etc.) and (2) *respondeat superior* liability, under which Ambros would be held liable for Casey's negligence simply because it was her employer, and not because Ambros was independently negligent. Both ways for Ambros to be found liable require proof that Casey was negligent, and proof that her negligence was the legal cause of Roland's death.

*Respondeat superior* requires proof that Casey was acting in the course and scope of her employment at the time of the accident. If she wasn't, Ambros cannot be held liable on this theory. If she was, Ambros can be held liable on this theory, but only if Casey was negligent, and only if her negligence was the legal cause of Roland's death. What I'm trying to do in the interrogatory answers is leave open the possibility that at her sworn deposition, Casey will testify that she was not negligent in connection with Roland's death, or perhaps admit that even if she was negligent, her negligence did not cause Roland's death. Assuming no one else testifies that Casey was negligent (such as some expert witness in the field of golf carts), this might eliminate the possibility of a judge or jury determining that Ambros is liable on a *respondeat superior* basis. It might also eliminate the possibility that Ambros is liable based on its independent negligence. I say this because if the judge or jury determines that Ambros negligently trained Casey on how to drive a golf cart, but also determines that Casey was not negligent, there would be no "causation" between Ambros' negligence and Roland's death. As an example, if a tire shop negligently installs my right rear tire, and I get into an accident because my front left tire falls off, the tire shop is not liable to me, because its negligence did not cause my accident.

If Ambros is sued solely on a respondeat superior theory, isn't there just one box for" Casey employee/Ambros"? And if "Casey spouse" had no involvement in the accident in that capacity, doesn't "Casey spouse" get left out of the equation, except to the extent Rolling-off Roland's comparative negligence gets attributed to her. Hence, two lines:

1.    Casey as employee (imputed to Ambros) [_____ % negligence]

2.    Roland [imputed to Casey as widow]        [_____ % negligence]

sf

**B.** As mentioned above, at her deposition Ms. Truong mentioned two grounds for liability on Ambros' part. First, she says Ambros is liable because the area where the accident happened, which is owned and controlled by the Navy, has potholes in it. This is basically a "premises liability" theory of recovery. Second, she argues that no one at Ambros taught her how to safely operate a golf cart. This is an "inadequate training" theory. As the court will see, under the undisputed facts and established case law, Ambros had no duty of care to Ms. Truong either theory of relief. Additionally, assuming for the sake of argument that Ambros did have a duty of care to Ms. Truong, under the undisputed facts and established case law Ambros did not beach any duty of care it may have owed to Ms. Truong. Ambros' lack of a duty of care to Ms. Truong under her premises liability theory of relief is explained in Section B.1 of this memorandum. Ambros' lack of a duty of care to Ms. Truong under her "failure to train" theory of relief is explained in Section B.2 of this memorandum. Ambros' satisfaction of any duty of care it may have owed to Ms. Truong is explained in Section 3 of this memorandum.

"The existence of a legal duty in a given factual situation is a question of law" for the court to decide, not for the jury to decide. <u>Nissan Motor Corp. v. Sea Star Group</u>, 2002 Guam 5, 10 (Guam Sup. Ct. 2002). Accordingly, the existence of a duty is an issue of law properly resolvable on summary judgment. "In a negligence action, the existence of a duty of care owed by a defendant to a plaintiff is a legal issue that is particularly amenable to resolution on summary judgment ... A defendant in a negligence action may obtain summary judgment by

5

demonstrating that the evidence shows it owed no duty to the plaintiff that could have been breached." Voumas v. Fid. Nat. Tit. Ins. Co, 73 Cal. App. 4th 668, 672 (Cal. Ct. App. 1999).

## 1.    Premises Liability: No Duty Of Care.

The Three Doors Down Concert was held on April 2, 2005 on United States Navy property at Polaris Point, Guam. Declaration of Paul Shimizu ("Paul Shimizu Dec."), ¶¶ 2, 3. Malafunkshun Productions was the concert's promoter, not Ambros. Paul Shimizu Dec., ¶ 2. Ambros did not own, lease occupy, or control the area where the concert was held. Paul Shimizu Dec., ¶ 3. There is no evidence that the Navy would have done anything had Ambros asked it to "pour some cement" or "rope off" the cement area. For these reasons, Ambros therefore cannot be held liable on a premises liability theory of negligence based on condition of Polaris Point. If a defendant does not own or control an area, it has no duty of care to people who are injured by reason of the area's unsafe condition. "When a person is injured as a result of the conditions of land or buildings or structures on the land, it is the possession or control of land that imposes liability for those injuries ...". Nicholas v. Stop & Shop Corp., 1998 Conn. Super. LEXIS 3392 (Conn. App. Ct. 1998). "(T)he duty of care resides in the party who controls the premises ... 'an owner or occupier who has no control has no duty to warn against the danger or to take any action to relieve the danger.'" Kibbons v. Union Electric Co., 823 S.W.2d 485, 489 (Mo. 1992); see also, Schulman v. City of N.Y., 190 A.D.2d 663 (N.Y. App. Div. 1993) ("since the City did not own the roadway on which the accident involving the plaintiff's decedent occurred, it had no duty to warn users of the roadway of known dangers on it"); Vela v. Cameron County, 703 S.W.2d 721, 723 (Tex. App. 1985) ("Because neither the accident in question occurred on 'premises' owned, occupied or controlled by the County, nor was the hazard located on its

premises, the County owed no legal duty to warn Vela of the dangers off its premises"); ...".

Sollami v. Eaton, 201 Ill. 2d 1, 17-18 (Ill. 2002). ("The mere fact that Eaton may be aware that teenagers such as Kathleen use his trampoline and may injure themselves while performing inappropriate maneuvers ... does not translate into a legal duty to provide warnings or supervision or to prevent use of the trampoline").

If Polaris Point is unsafe, which it isn't, Ambros is not liable for that. The United States government owns Polaris Point, not Ambros. And in fact, Ms. Truong has sued the United States in federal court for failing to instruct her how to drive a golf cart and for the "potholes" at Polaris Point. The court may wish to take judicial notice of the complaint Ms. Truong filed in District Court Case CV 06-00022, Cassandra Truong vs. United States of America.

**2.     Failure to Train:  No Duty.**

**a.     Ambros Had No Duty To Train Plaintiff How To Drive A Golf Cart Because It Is Undisputed She Already Knew How To Drive A Golf Cart.**

Ms. Truong is a golfer. Truong depo, p. 36, lines 4-18. Prior to the day of the accident, Ms. Truong had driven golf carts numerous times. Id. For this reason, Ambros had no duty to train her how to drive a golf cart. "We reject the plaintiffs' contention that the appellants created a dangerous condition by instructing the injured plaintiff to carry a bucket of dirty water down the stairs to dump it into the street. The task was not inherently dangerous, and the appellants had no duty to train, instruct, or direct the injured plaintiff in this common and ordinary activity, which had been performed by the injured plaintiff many times before the accident without incident ... Accordingly, the appellants' motion for summary judgment should have been

7

granted." <u>Viskovic v. ENK Enters.</u>, 282 A.D.2d 672, 673 (N.Y. App. Div. 2001). "While the appellant argues that there are questions of fact as to whether Ogden provided training and instruction to Wisloh, his injuries resulted from his opening a door -- a common activity for which an employer has no duty to train an employee." <u>Wisloh v. Air-A-Plane Corp.</u>, 251 A.D.2d 657, 658 (N.Y. App. Div. 1998). "Plaintiff's employer had no duty to train, instruct or direct its employee in the common and ordinary activity, previously performed many times by plaintiff, of walking up a ramp." <u>Cummings v. Arde Realty Corp.</u>, N. V., 154 A.D.2d 321 (N.Y. App. Div. 1989). "There is certainly no basis to believe that the defendant The Sports Authority had any duty to warn or to notify the plaintiff about the dangers of using in-line skates because she already appreciated such dangers ... . For the same reason, the defendant seller had no duty to train or supervise the plaintiff or its employees in the proper use of the product." <u>Rose v. Sports Auth.</u>, 14 Mass. L. Rep. 721 (Mass. Super. Ct. 2002).

For a golfer like Ms. Truong, driving a golf cart is a "common and ordinary activity" for which no training was necessary. Ambros had no legal duty to train her or provide her with any warnings. Aioi is entitled to summary judgment on this ground.

**b.  Ambros Had No Duty To Warn Or Train Plaintiff Not To Drive Golf Cart Through Potholes Because Plaintiff Admittedly Knew The Attendant Risks Are "Common Sense."**

Ms. Truong admitted, in her own sworn words at her deposition, that "common sense" holds that it is dangerous to drive golf carts through potholes with people standing on the back. Truong Depo., p. 33, lines 15-19. She also admitted that it is "common sense" that a person standing on the back of a golf cart might fall off if the driver drives over bumps. Truong Depo.,

8

p. 34, lines 6-13. Since Ms. Truong already knew that these things were "common sense," Ambros had no duty to warn her about them. "Where a danger is readily apparent as a matter of common sense, 'there should be no liability for failing to warn someone of a risk or hazard which he [or she] appreciated to the same extent as a warning would have provided.' Put differently, when a warning would have added nothing to the user's appreciation of the danger, no duty to warn exists as no benefit would be gained by requiring a warning." Westbrook v. WR Activities-Cabrera Mkts., 5 A.D.3d 69, 71 (N.Y. App. Div. 2004) quoting Liriano v Hobart Corp., 92 N.Y.2d 232, 242, 700 N.E.2d 303, 677 N.Y.S.2d 764 [1998], and Prosser and Keeton, Torts §96, at 686 [5th ed]). "Because the injured employee admitted he knew of the dangers involved in servicing the machine while it was running, a warning would not reduce the likelihood of injury. When as in this case, a danger associated with a machine is fully obvious and generally appreciated, there is no additional duty on the part of the manufacturer to include a warning. ... The danger here was one that no one who thought about it . . . could fail to appreciate. The plaintiff was no less knowledgeable than the defendant about the danger". Brook v. Black Clawson Co., 2001 Mass. Super. LEXIS 158, 11-14 (Mass. Super. Ct. 2001)[2]

In Vela v. Yamaha Motor Corp., 2002 Tex. App. LEXIS 3185, 1-4 (Tex. App. 2002) (unpublished), golf cart driver Vela left his leg hanging out of the cart as he drive along. His heel caught on a pole and he was injured. He sued everyone, including the golf cart manufacturer, Yamaha, and the retail seller, Easy Ride. As for Easy Ride, Vela said the cart failed to have a sticker or other label warning him to keep his feet inside the cart while it was moving. He characterized his cause of action as a "failure to warn." This is essentially what

---

[2] Book v. Black Carlson was a products liability case rather than a negligence case. However, "(T)he duty to warn analysis in a negligence action is essentially similar to the analysis under strict liability." Toys "R" Us, Inc. v. Criterion Coating Sys., 1986 U.S. Dist. LEXIS 24315 (D. Ill. 1986).

9

Plaintiff Truong is claiming in this case – that Ambros failed to warn her not to drive though potholes with people hanging on the back of the cart. According to the Vela court, however, "there is no duty to warn of obvious risks -- risks that are 'within the ordinary knowledge common to the community' ... All witnesses, including Vela and his co-worker Sergio Garcia, testified that it is common sense to keep your hands and feet inside the car." The trial court's dismissal of Easy Ride was affirmed on appeal. Vela v. Yamaha Motor Corp., 2002 Tex. App. LEXIS 3185, 1-4 (Tex. App. 2002).

The same is true here. Ms. Truong stated under oath at her deposition that it is "common sense" that if someone drives a golf cart through a pothole with a person hanging on the back, that person might fall off and get hurt. Because this is a "common sense" proposition, there was no duty on Ambros' part to warn Ms. Truong not to do it. Summary judgment should be granted on this ground to Aioi.

### c. Ambros Had No Duty To Warn Or Train Plaintiff How To Drive A Golf Cart Because There Is No Evidence That Golf Carts Are Inherently Dangerous.

Ambros did not supply Ms. Truong with explosives, or weapons, or poison. It supplied her with a golf cart. In opposing this motion for summary judgment, Ms. Truong needs to be able to point to some credible evidence that golf carts are inherently dangerous when put to their intended use. She will not be able to do this.

The vast majority of things people come into contact with in their daily lives are not inherently dangerous, but can nevertheless cause injury if used wrong. If someone stubs his toe on a planter on his way to get the morning newspaper, it will injure him. If he jabs his finger with a fork while eating his eggs, it will injure him. If someone slips on the floor while he is in

the shower, it will injure him. If someone hits his thumb with a hammer, it will injure him. But the law does not require any special instructions or safety precautions with respect to planters, or forks, or showers, or hammers. The courts do "not recognize the existence of a duty to undertake safety precautions unless and until the activity is 'sufficiently dangerous'." Blevins v. Taylor, 103 N.C. App. 346 (N.C. Ct. App. 1991), citing Deitz v. Jackson, 57 N.C. App. 275 (N.C. Ct. App. 1982). Instead, the duty to provide instructions or warnings to someone exists only if "harm will likely result if precautions are not taken" by a person with general oversight over the activities. Blevins v. Taylor, supra. And, it is clear that courts "may pass upon the intrinsic dangerousness of an activity as a matter of law". Id. In making that determination, the courts will decide whether there is a "recognizable and substantial danger inherent" in the activity in question. Id. As just alluded to, "(i)ntrinsic dangerousness is not the ordinary dangerousness which accompanies countless activities when they are negligently performed." Id.

There is no evidence in this case, and there will be no evidence in this case, that golf carts are inherently dangerous when put to their intended use. "It is well established that "there is no 'duty to warn' where a product is not shown to be dangerous when put to its intended use." Donnelly v. Club Car, Inc., 724 So. 2d 25, 28 (Ala. Civ. App. 1998); Gurley v. American Honda Motor Co., 505 So. 2d 358 (Ala. 1987). Because of this, Ambros had no duty to give any particular warnings to Ms. Truong about driving a golf cart. "The purpose of a warning is to apprise the party of a danger of which she has no knowledge and thereby enable her to take appropriate measures to protect herself." Kokoyachuk v. Aeroquip Corp., 172 Ill. App. 3d 432, 526 N.E.2d 607 (1988). "Where the danger is obvious and generally appreciated, nothing is gained by a warning and none is required. ... Injuries are not compensable if they are caused by inherent propensities of a product which are obvious to all who come into contact with it."

<u>Timm v. Indian Springs Recreation Ass'n</u>, 226 Ill. App. 3d 760, 766 (Ill. App. Ct. 1992). Again, Plaintiff will not be able to point to any evidence that the golf cart she was driving was inherently dangerous when put to its normal use. Therefore, Ambros had no duty warn her or train her. Aioi's motion for summary judgment should be granted on this ground.

### d. Ambros Had No Duty To Warn Or Train Plaintiff Not To Drive A Golf Cart Through Potholes With A Person Hanging On The Back Of The Cart Because The Attendant Risks Are "Open And Obvious."

As mentioned above, Ms. Truong had been driving her golf cart all day long before the accident happened. She had driven on and over the concrete area where she now says the offending pothole was. Truong Depo., p. 35, lines 19-23. Asked whether she had noticed, <u>before</u> the accident, whether the concrete area had potholes and bumpy areas, Ms. Truong responded in a variety of ways:

> Q: Did you know that the ground was unlevel and there were pot holes before the accident?
>
> A: Before the accident, I didn't take notice of it.

Truong Depo., p. 19, lines 22-25; p. 20, lines 1-2.

> Q: Did you notice that it was unlevel and there were potholes?
>
> A: Did I notice? I don't remember.

Truong Depo., p. 22, lines 10-12.

> Q: And you don't remember seeing that there were pot holes and railroad tracks and other bumpy areas?
>
> A: I must have seen it, but do I remember now if I saw it?
>
> Q: Yeah.

12

A:     Before the concert? I don't remember."

Truong Depo., p. 35, lines 24-25; p. 36, lines 1-3.

Regardless of whether Ms. Truong saw the potholes before the accident, it is undisputed she saw them after the accident:

> Q:     How do you know there were potholes everywhere  and that the ground wasn't level?
>
> A:     Because I was there.[3]

The point is this:  Since Ms. Truong was able to see the potholes after the accident, logically she was able to see them before the accident.   Moreover, Ms. Truong drove over several bumps before her husband fell off the cart.  Truong Depo., p. 58, lines 11-14.  These facts, combined with her candid testimony that it is dangerous to drive over potholes with people hanging from the back of the cart, is fatal to her lawsuit under the well-established "open and obvious hazard" doctrine.  The potholes were visible and Ms. Truong knew she was driving over bumps before the accident.  "Generally, the possessor of premises must exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition on the land. ...  However, if the dangerous condition is open and obvious so that the invitee is reasonably expected to discover it, the invitor owes no duty to protect or warn the invitee. ...  A dangerous condition is open and obvious where 'an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection.'  ...  The open-and-obvious analysis focuses on the objective nature of the condition, not on the subjective care or perception of the plaintiff. ...  Thus, if a condition is dangerous only because a particular invitee does not discover the condition or realize its danger, the open and obvious

---

[3] Obviously, if Ms. Truong saw no potholes before or after the accident, she would have no lawsuit.

13

doctrine precludes liability for the possessor of the premises." <u>Lovelace v. Course</u>, 2006 Mich. App. LEXIS 3360 (Mich. Ct. App. 2006)[4]

A "landowner has no duty to warn an invitee 'where the anticipated harm involves dangers so obvious that no warning is necessary.' ... The rationale underlying this rule is that 'no one needs notice of what he knows or reasonably may be expected to know.' ... The test for whether a danger is so obvious that no warning is necessary 'is not whether the injured party actually saw the danger, but whether it was in fact visible.'" <u>Schneider v. Lanesboro Golf & Country Club</u>, 2001 Minn. App. LEXIS 558, 5-8 (Minn. Ct. App. 2001). In <u>Schneider</u>, the court held that the defendant had no reason to anticipate that the plaintiff would not be "aware of the surface or perpendicular angle" of a golf cart path, "since both were visible." Because any potential danger was "visible," the appellate court upheld the trial court's ruling that the golf course had no duty to warn the plaintiff about the golf cart path. Id.

"(I)t is well-settled that there is no duty to warn of a risk which is open and obvious. ... Generally, if a product possesses dangerous propensities, a duty to warn arises when there is unequal knowledge, actual or constructive, and the defendant possessed with such knowledge, knows or should know that harm might occur if no warning is given. ... Since the purpose of a warning is to apprise a party of a danger of which he has no knowledge and thereby enable him to take appropriate measures to protect himself, it logically follows that warnings serve no purpose and, hence, are not required where the dangers are open and obvious." <u>Gillman v. Crown Equip. Corp.</u>, 1996 U.S. Dist. LEXIS 11667, 6-9 (D. Ill. 1996). "Generally, a duty to warn exists when there is unequal knowledge and the defendant, possessed of such knowledge,

---

[4] <u>Lovelace</u> itself is unpublished and not citable, at least in Michigan, but the cited portions of <u>Lovelace</u> above are all quotes from published opinions, namely <u>Bertrand v Alan Ford, Inc</u>, 449 Mich. 606, 609; 537 N.W.2d 185 (1995); <u>Novotney v Burger King Corp</u> (On Remand), 198 Mich. App. 470, 475; 499 N.W.2d 379 (1993), and <u>Lugo v Ameritech Corp, Inc</u>, 464 Mich. 512, 524; 629 N.W.2d 384 (2001).

14

knows or should know that harm might occur if no warning is given … The purpose of a warning is to apprise the party of a danger of which he has no knowledge and thereby enable him to take appropriate measures to protect himself. … Where the danger is obvious and generally appreciated, nothing is gained by a warning and none is required." Kokoyachuk v. Aeroquip Corp., 172 Ill. App. 3d 432, 439 (Ill. App. Ct. 1988). "The cases have uniformly held that the purpose of a warning is to apprise a party of danger of which he has no knowledge and thereby enable him to take measures which will protect him against those dangers; however, when a danger is obvious and generally appreciated, nothing of value is had by a warning and none is required under those circumstances." Midwest Specialties v. Crown Indus. Prods. Co., 940 F. Supp. 1160, 1165-1166 (D. Ohio 1996). "(T)he open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." Armstrong v. Best Buy Co., Inc., 99 Ohio St. 3d 79, 2003 Ohio 2573, 788 N.E.2d 1088, at P5. "A duty to warn is not imposed by law as a mindless ritual. A warning is not required unless 'the person on whom [the] duty rests has some reason to suppose a warning is needed.' The duty to warn extends to concealed, nonobvious dangers." Killeen v. Harmon Grain Products, Inc., 11 Mass. App. Ct. 20, 24, 413 N.E.2d 767 (1980). "(I)t is clear that there should be no liability for failing to warn someone of a risk or hazard which he appreciated to the same extent as a warning would have provided". Slate v. Bethlehem Steel Corp., 400 Mass. 378, 382, 510 N.E.2d 249 (1987), quoting W. Prosser & W. Keeton, Torts § 96, at 686 (5th ed. 1984)

Ms. Truong cannot recover against Ambros because of the "open and obvious hazard" doctrine. Potholes are open and obvious. Ms. Truong admitted it was "common sense" that she shouldn't have driven through a pothole with her husband riding on the back of the cart, in a space designed to carry golf bags, not people.

15

Ambros had no legal duty to warn Ms. Truong about potholes. Ambros had no legal duty to warn Ms. Truong to not drive her golf cart through potholes. And Ambros certainly had no duty to warn her not to drive through potholes with a person hanging from the back of the cart. Aioi's motion for summary judgment should be granted on this ground.

### e. Ambros Had No Duty To Warn Or Train Plaintiff Because Ambros Had No Knowledge Of Any Dangerous Condition At Polaris Point.

Ms. Truong also bears the burden of pointing to evidence that Ambros had actual or constructive notice of a dangerous condition at Polaris Point before the accident. Guerrero v. McDonalds, 2006 Guam 2; Lopez v. Superior Court, 45 Cal. App. 4th 705; 52 Cal. Rptr. 2d 821 (1996). In the absence of actual or constructive knowledge of a dangerous condition, premises owners and others have no duty to warn or make repairs. Moore v. Wal-Mart Stores, Inc., 111 Cal. App. 4th 472, 476, 3 Cal. Rptr. 3d 813 (2003). The existence of a duty, the scope of the duty, and the formulation of the standard of care are questions of law for the court to decide. Ann M. v. Pacific Shopping Center, 6 Cal. 4th 666, 674 (1993). In responding to a motion for summary judgment, a plaintiff must "allege and prove that the defendants had actual or constructive notice of the presence of the specific unsafe condition that caused [his] fall . . . Either type of notice must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it . . . On the question of notice the trier's consideration must be confined to the defendant's knowledge and realization of the specific condition causing the injury, and such knowledge cannot be found to exist from a knowledge of the general or overall conditions

16

obtaining on the premises." <u>Mitchell v. Covone</u>, 2002 Conn. Super. LEXIS 2346, 9-10 (Conn. Super. Ct. 2002).

Ms. Truong cannot sustain her burden here. It is undisputed that Ambros did <u>not</u> have any actual or constructive notice of any dangerous condition at Polaris Point before the accident. Before the Three Doors Down concert, Ambros had co-sponsored several concerts at Polaris Point over the years. Paul Shimizu Dec., ¶ 4. Before those concerts, and before the Three Doors Down concert, Ambros representatives had inspected the concert site and found nothing dangerous. Paul Shimizu Dec., ¶ 4. During the Three Doors Down concert, no person or entity or co-sponsor ever complained or said anything at all to Ambros about the condition of any portion of the concrete area where the concert was held. Aguon Dec., ¶ 3; Paul Shimizu Dec., ¶ 5. At other concerts prior to the Three Doors Down concert, no person or entity or co-sponsor ever complained or said anything at all to Ambros about the condition of any portion of the concrete area where the prior concerts were held. Shimizu Dec., ¶ 5; Declaration of Tom Shimizu ("Tom Shimizu Dec."), ¶ 4. There were no accidents involving potholes or golf carts at any Ambros-sponsored prior Polaris Point concert, or at the Three Doors Down concert, until Ms. Truong's accident. Aguon Dec., ¶ 4 Truong Depo., p. 59, lines 20-25; p. 60, lines 1-8; Before the Three Doors Down concert, Ambros knew that Ms. Truong had driven golf carts before (Aguon Dec., ¶ 6) and knew that she drove one all day long without difficulty on the day of the accident. Aguon Dec., ¶ 5. Because there is no evidence that Ambros was on notice of any unsafe conditions at Polaris Point after reasonable inspections, Ambros had no duty to train or warn Ms. Truong about any such conditions. Aioi's motion for summary judgment should be granted on this ground.

17

### 3. Ambros Breached No Duty Of Care It May Have Owed To Plaintiff Because She *Was* Provided With A Proper Warning.

The accident happened around 6:30 or 7:00 p.m. Truong Depo., p. 39, line 12. Ms. Truong had been driving the golf cart all day long. Truong Depo., p. 13, lines 7-25; 14, lines 1-16. There was a warning sign on the dashboard of the golf cart, right in front of her face. Aguon Dec., ¶ 7. The relevant portions are set forth below:

# WARNING

READ AND FOLLOW THESE WARNINGS AND THE OPERATING INSTRUCTIONS BEFORE USING VEHICLE. FAILURE TO DO SO CAN CAUSE SEVERE INJURY OR DEATH

DO NOT start vehicle until all occupants (two (2) per seat maximum) are seated.

Remain seated with entire body inside vehicle and hold on to seat handle or handrail at all times.

Aguon Dec., Exhibit 1. Asked about the warning sign at her deposition, Ms. Truong said "I don't remember seeing this." Truong Depo., p. 15, line 14. Asked whether she would have let her husband ride on the back of the golf cart if she had seen the warning sign prior to the accident, Ms. Truong replied, "Probably not." Truong Depo., p. 33, lines 4-7.

In Gillman v. Crown Equip. Corp., 1996 U.S. Dist. LEXIS 11667, 6-9 (D. Ill. 1996), supra, plaintiff was injured while being lifted on a forklift without any restraints. She sued. The court held that the defendant had no duty to warn plaintiff about the risk of falling because the "danger of falling under such circumstances is a matter of common knowledge and perception." Notwithstanding this, the court found that the defendant had, in fact, supplied plaintiff with an adequate warning in the form of stickers placed on the forklift. One sticker stated: "Warning:

Standing or riding on the forks can cause a fall. You can be seriously injured or killed." Another stated: "Warning: Lifting people without a proper platform can cause a fall and serious injury." These were deemed sufficient warnings as a matter of law. If they were sufficient as a matter of law in Gilman v. Crown, they are sufficient as a matter of law here. As the Gillman court explained, a "warning is adequate as a matter of law when it is stated with a degree of intensity that would cause a reasonable man to exercise caution commensurate with the potential danger involved." Gillman involved heavy equipment. This case merely involves a golf cart.

Of course, Ms. Truong insisted at her deposition that she hadn't read the warning on the dashboard of the golf cart before the accident, even though she had been driving the golf cart around all day long. This has no legal significance. "Plaintiff's failure to read the warning is of no moment however if the warning is adequate as a matter of law." Tripolone v. Genova Prods., 1997 U.S. Dist. LEXIS 13800 (D.N.Y. 1997).

## III.   CONCLUSION.

In a negligence action, a plaintiff still has to show duty, breach of duty, causation, and damages. Guerrero v. McDonald's Int'l Prop. Co., Ltd., 2006 Guam 2, 9 (Guam Sup. Ct. 2006) ("establishment of tort liability requires the existence of a duty, the breach of such duty, causation and damages"). In this case, to avoid the entry of summary judgment against her, Ms. Truong must point to some admissible evidence that Ambros (1) had a duty of care to her, and that (2) it breached its duty of care to her.[5]  Now that her deposition has been taken and her sworn testimony preserved, she will be unable to this. It is undisputed that Ms. Truong was

---

[5] In the event a trial is necessary, Plaintiff's decedent's extreme and undisputed intoxication level, and the fact that Ms. Truong also admitted to drinking alcohol before the accident, would bring into play the "causation" element of her cause of action for negligence.

Case 1:06-cv-00022   Document 21   Filed 08/15/2008   Page 36 of 38

familiar with how to operate golf carts, since she is a golfer and she frequently operated golf carts before the accident. It is undisputed Ambros knew this before the concert. It is undisputed that Ambros knew before the concert that golf carts are not inherently dangerous when put to their intended use. It is undisputed that Ambros knew there was a warning sticker on the golf cart cautioning drivers to make sure all passengers are seated, that they are seated inside the golf cart, and that they are holding on to a seat handle or a hand rail. It is undisputed that Ambros knew that golf carts have been used at all Polaris Point concerts prior to the Three Doors Down concert, and that before Ms. Truong's accident there has never been any other accidents involving the use of a golf cart. It is undisputed that Ambros inspected Polaris Point before the Three Doors Down concert, and before other concerts, and that Ambros never discovered any dangerous or unsafe conditions. Finally, before Ms. Truong's accident, it is undisputed that Ambros knew, and undisputed that Ms. Truong knew, that "common sense" holds that it is dangerous for people to drive golf carts through potholes with people hanging from the back of the cart.

Aioi submits that on the undisputed evidence and under the established case law, the court should determine that Ambros had no duty of care to Ms. Truong, and grant summary judgment on this basis. Aioi also submits that on the undisputed evidence and under the established case law, the court should determine that no reasonable jury could find that Ambros breached any duty of care to Ms. Truong, and grant summary judgment on this basis, as well.

DOOLEY ROBERTS & FOWLER LLP

Date: _____       By: _____
                                    **TIM ROBERTS, ESQ.**
                                    Attorneys for Defendants

20

F:\Documents\TLR (07-04)\D109\D109-58\D109-58.MSJ Memorandum.doc