1  LEONARDO M. RAPADAS
   United States Attorney
2  MIKEL W. SCHWAB
   Assistant U.S. Attorney
3  JESSICA F. CRUZ
   Assistant U.S. Attorney
4  Sirena Plaza, Suite 500
   108 Hernan Cortez Avenue
5  Hagåtña, GU 96910
   Tel: (671) 472-7332
6  Fax: (671) 472-7215

7  Attorneys for the United States





8              IN THE UNITED STATES DISTRICT COURT

9                 FOR THE TERRITORY OF GUAM

10 CASSANDRA CHAU TRUONG,                    Case No.: 06-00022
11 Administratrix of the Estate of ROLAND
   ANTHONY BOUDREAU, deceased,
12            Plaintiff,                     **TRIAL BRIEF OF THE UNITED STATES**
13        vs.
14 UNITED STATES OF AMERICA,
15            Defendant.
16

17       The United States, by and through its attorneys in the above entitled matter, hereby

18 submits this trial brief.

19       Plaintiff is alleging, under the Federal Tort Claims Act, that the negligence of an

20 employee of the United States caused or contributed to the death of her husband. In fact, the

21 unfortunate accident and the death were caused by the negligence of the Plaintiff and the

22 deceased, Roland Boudreau.

23       There is no proximate cause between any acts of federal employees of the United States

24 and the accidental death.

25                                    1

**ORIGINAL**

## I.    FACTUAL SUMMARY

Just after 7:00 p.m., on April 2, 2005, Cassandra Truong, Plaintiff, was driving a golf cart slowly across a field on Navy property at Polaris Point with her husband hanging on to the back of the cart on a platform designed to carry golf clubs, not people. Both Plaintiff and her husband had been drinking during the day. Someone alerted her that he was no longer on the back. She stopped her cart and found him several feet back lying on a concrete area that she had just driven over. He was transported to the hospital and died the following day.

Plaintiff was at Polaris Point as part of a team of people from Ambros, Inc. (hereinafter "Ambros"). Ambros held a concert there on the Navy property that day (for a performance of a musical group, "Three Doors Down"). Plaintiff was the Marketing Manager for Ambros and, as part of her promotional duties, she had set up a "VIP tent". She provided her husband, Roland Boudreau, with a VIP pass and sent him to a special VIP party at the Hard Rock Café, which included unlimited, free beer prior to the concert and a bus drive to the concert and back. After the party at Hard Rock, the bus brought Boudreau to the concert at approximately 1:30 p.m. Plaintiff's VIP tent included free beer for the VIPs. Boudreau was in the VIP tent until just after 7:00 pm, when Plaintiff placed him on the back of the cart and drove across the field.

Initially, after the accident, Plaintiff submitted a sworn statement to Naval investigators that her husband had jumped off the back of the cart to retrieve a fallen zori (sandal), lost his balance, and ended up face down on the ground. The hospital, as part of his emergency medical care, determined that his Blood Alcohol Content (BAC) was .2258, or approximately three times the legal limit.

2

Later, Plaintiff claimed that a "hole" in the concrete slab had caused the decedent to be thrown off the cart. Her previously sworn statement to Naval investigators contained no such complaint.

Plaintiff then sued the United States in this Court claiming that the Navy's negligence was the proximate cause of the accident. In depositions, she denied her own negligence and stated that the Navy was negligent in allowing her, an avid golfer with admitted experience driving golf carts, to operate the cart without training and for having an irregular surface that included what she described as a "hole".

The field where Plaintiff drove the golf cart is regularly inspected and maintained. Prior to the concert event, the field was inspected by the Navy and Plaintiff's employer, Ambros. Any irregularities of significance in the field were marked by cones. Metal trash drums were also placed in any significant area of indentation. No "hazards" were seen or known to the Navy. In fact, the field has been used for community activities for many years, before and after the accident, and the Navy has never received a report of a hazard or injury on the field. The concrete slab area had irregularities in the concrete, such as embedded tracks and aging concrete with areas of cracks and grass, but nothing that would be considered a hazardous condition. The slab area was inspected by an employee of Ambros just after the accident. He found no dangerous conditions; certainly nothing that would pose a danger to a slow moving golf cart.

During a site visit in the discovery period in this case, the Plaintiff identified an area in the concrete that was indented and had grass growing in it as the "hole" she says caused the decedent to fall from the golf cart. Plaintiff claims she was not going full speed in the cart. An Accident Reconstruction Engineer with a Ph.D., Dr. Frank Perez, tested the identified "hole" at different speeds, including full speed, and at different angles, to determine, by instrument, if

3

there were forces that would cause a person to fall. None exist. The accident reconstruction engineer found no hazards in the identified area that would cause a person with normal faculties to fall.

The United States has further consulted a medical doctor with an expert background in alcohol and its effects, Dr. Shieh. He has further confirmed that a person at .2258 BAC, such as the deceased, would have been severely intoxicated and lacking normal functioning faculties.

The golf cart that the U.S. Navy allowed Plaintiff's employer to use for transporting items from a parking lot/staging area to the VIP tents included a sign that prohibited more passengers than would fit in the seats. The sign, permanently embedded on the dashboard, in her line of sight as she drove the cart all day, stated, "DO NOT start vehicle until all occupants (two (2) per seat maximum) are seated" (Capitalization in original). It also stated, "DO NOT operate while under the influence of alcohol..." In addition, Plaintiff's employer had someone who specifically told her not to have people hanging on to the back of the cart.

Golf carts are not inherently dangerous; they are only dangerous when misused. The grounds were not dangerous. The unfortunate accidental death was proximately caused by the negligent actions of the Plaintiff and Mr. Boudreau and not any alleged act or omission by an employee of the United States.

## II.    THE FEDERAL TORT CLAIMS ACT

Under the doctrine of sovereign immunity, courts may not entertain suits against the United States without its consent. Consequently the United States is liable in tort only to the extent it waives its sovereign immunity. The Federal Torts Claims Act, 28 U.S.C. §§ 1346 (b), 2671 to 2680 ("FTCA"), is the exclusive remedy for persons seeking damages from the United States for personal injuries. The FTCA is only a limited waiver of sovereign immunity. It

4

makes the United States liable to the same extent as a private individual *for certain torts of federal employees acting within the scope of their employment.*   28 U.S.C § 1346 (b).   As a result, there must be an actual negligent act or omission on the part of a federal employee. Inferences and strict liability are not allowed.  Laird v. Nelms, 406 U.S. 797 (1972).

Waivers of sovereign immunity, such as the FTCA, are strictly construed in favor of the sovereign.  Owen v. United States, 935 F.2d 734 (5th Cir. 1991).  The burden of proving that the government's negligence was the proximate cause of the injury generally falls on the plaintiff. Cualey v. United States, 242 F. Supp. 866 (E.D. N.C. 1965).  The government's negligence is not the proximate cause if the plaintiff's injury was not foreseeable.  Garza v. United States, 809 F.2d 1170 (5th Cir. 1987).  Similarly, the government's negligence may be superseded by a third party's act that constitutes an intervening cause of the plaintiff's injury.  Aikona v. United States, 732 F. Supp. 1064 (D. Haw. 1990), rev'd, 938 F.2d 158 (9th Cir. 1999).

This creates a barrier for the Plaintiff in this case.  Placing her severely inebriated husband on the back of a golf cart, with no safety restraints, was a negligent act. Mr. Boudreu's inebriation to the point of .2258 was also a negligent act.  These acts, along with Plaintiff's decision to drive the cart after consuming alcohol, were the proximate cause of the accident.  It is Plaintiff's burden to show that these acts were not the sole causes of the accidental death.

## III.    NO LIABILITY DUE TO PROPERTY OWNERSHIP

The United States, under the FTCA, cannot be held liable for the accident simply because it owns the land upon which the accident occurred.  This would be akin to holding the United Sates strictly liable.  Such a strict liability theory against the United States is not permitted. Dennis v. United States, Memorandum Opinion, (Civil Case No. 88-42 D. Ct. Guam 1990) (affirmed on appeal by the Ninth Circuit in an unpublished disposition), attached as Exhibit A.

5

In Dennis, the plaintiff had stepped into a hole (where a pole had previously been) on the Naval Hospital property on Guam and snapped her leg at the knee, requiring knee replacement surgery. The United States was found to be not liable under the FTCA because it had conducted reasonable inspections of the land and had not found the hazard. The Guam District Court stated, "Indeed, the United States did conduct reasonable inspections of the area in question and did not discover..." the hole. Id. at page 8.

Neither could a private landowner on Guam be held liable in such circumstances. In Guerrero v. McDonald's Int'l Prop. Co., Ltd., 2006 Guam 2, ¶ 26-27, the plaintiff had fallen inside a McDonald's. The plaintiff alleged that she entered the restaurant, stepped on something on the floor and fell, injuring herself. The court found that "no inference of negligence arises based simply upon proof of a fall upon the owner's floor." The plaintiff must present evidence that the defendant "had actual or constructive knowledge of the transitory hazard and failed to exercise reasonable care to eliminate it." Id.

The Court will hear evidence that the Navy regularly maintains and inspects the grounds where the accident occurred. Literally thousands of people use the field for events that are either sponsored by the military, such as Fourth of July celebrations, or sponsored by entities in the community, such as the "Three Doors Down" concert that took place just before Mr. Boudreau's accident. There had never been an accident at that location previously. There has been no accident since.

The Navy, along with Ambros, inspected the field the day before the concert event. Where the field had any irregular areas or anything of note, cones and heavy metal trash drums were placed there to draw attention. The Navy and Ambros found no hazards where Plaintiff now claims the accident occurred.

Immediately after the accident, another employee at Ambros, who worked with the Plaintiff on the event, searched the area where the accident occurred. He organized a methodical inspection of the area and searched the area with another employee. They were looking for a cell phone the decedent had purportedly dropped, and they were curious as to what may have caused the accident. They searched the concrete pad where the decedent fell. They found no hazards. The irregularities, cracks with grass, etc., on the concrete pad, were not such that they constituted a hazard.

The United States had an Accident Reconstruction Engineer holding a Ph.D., Dr. Frank Perez, examine the area where the accident occurred. Plaintiff, herself, chose an area where she remembers the accident occurring and pointed to a break in the concrete where a lip could be said to have created a "hole". The Accident Reconstruction Engineer tested the area, using people on the back of the golf cart at varying speeds, including top speed and at various angles. He found that the lipped area of deteriorated concrete did not create any forces such that a reasonable person would be "thrown off". There was no hazard or dangerous condition.

An inspection of the property took place and no hazard was found. There is, therefore, no negligence on behalf of the United States as simply the owner of the land where the accident occurred.

## IV. NO LIABILITY FOR PLAINTIFF'S NEGLIGENT GOLF CART USE

Plaintiff claims that the United States was negligent in the accident because it failed to train her to operate a golf cart. She requested to drive a cart and Ambros gave her one of the carts for the intended purpose of taking supplies from the parking lot area to the VIP tent. She had driven it throughout the day.

7

All of the carts on the day of the accident were specially altered to make them slow (as is common with golf carts lent to the public). They all had signs permanently fixed inside the carts to warn that passengers were to be in the seat only and to not operate the cart after drinking alcohol. An Ambros employee specifically told her not to let people hang on to the back of the cart and to limit passengers to two per cart. Also, she will testify, as she did at her deposition, that she was a golfer and had previously driven a cart. Plaintiff will claim that she saw other people hanging on the back and therefore the United States is responsible for her decision to put her husband on the back. To the contrary, she failed to follow instructions to *not* allow passengers to hang on to the back of the cart.

Further, Plaintiff claims that she was in no way negligent. She claims she drove slower than the cart could go at full speed (which is still slow) and was not being reckless. If she admits she was driving correctly (in a non-reckless manner), then training would have been irrelevant. A "failure to train" was not the proximate cause of the accident. There must be some proof of a causal connection between the alleged negligence of the United States and the harm to the decedent. It is not enough to infer that the United States was negligent. Justice Cordozo stated it best, "negligence in the air is not enough." Palsgraf v. Long Island R.R. Co., 162 N.E. 99, 248 N.Y. 339 (1928).

Under the FTCA and under Guam's law of negligence, Plaintiff is not able to sustain her burden of showing negligence on the part of a federal employee. The proximate cause of the accident was, in fact, the decision by Plaintiff and her husband to drink to excess and hang on to the back of a slow moving cart.

## V. PLAINTIFF HAS ADMITTED TO HER NEGLIGENCE IN THE LOWER COURT

8

The instant case is not the only cause of action filed by the Plaintiff over the accident that occurred on April 2, 2005. The Plaintiff in this case had earlier filed another Complaint in the local court against a different defendant, Ambros, Inc., seeking money damages for the same accident. Truong v. Aioi Insurance Co., (Case No. CV 1082-06, Superior Court of Guam) (Aioi is the insurance company for Ambros) (hereinafter "Aioi"); See also Aioi, Complaint, attached as Exhibit B. The Aioi case was filed by Ms. Truong in the Superior Court of Guam. To prove negligence on the part of her employer, she has sought to show, in the lower court, that *she*, herself, acted negligently, thus making the employer negligent on the theory of *respondeat superior*. Aioi's Motion, relying in part on the depositions in this federal case, has highlighted Ms. Truong's obvious conflict by alleging in her complaint that Ambros is liable to her on a *respondeat superior* theory based on her own negligence, while simultaneously claiming in her sworn depositions that she was not negligent. See Aioi, Motion For Summary Judgment, (hereinafter the "Motion") at page 3, attached as Exhibit C. On the *respondeat superior* theory, the allegedly negligent employer, Ambros, was acting solely through its employee, Ms. Truong, in the events that led to the unfortunate accident. Under Guam law, if Ms. Truong was not negligent her *respondeat superior* tort claim against her employer fails as a matter of law.

Notwithstanding Ms. Truong's denials in the sworn depositions, her attorneys have argued, in the underlying case, that her negligent actions proximately caused her husband's death and therefore the employer is liable. See Aioi, Transcription of Guam Court Hearing Before the Honorable Judge Arthur R. Barcinas, November 14, 2007, (hereinafter the "Transcript"), pages 16-20, attached as Exhibit D. At the hearing, *Plaintiff's* attorney specified Plaintiff's negligent acts: she was drinking (while at work), she initially put six people on the golf cart after being told not to, she placed people on the back of the cart, and drove on a bumpy road after it turned

dark. In saying she was not negligent during the depositions, according to her attorney, she is just trying to deny fault in her husband's death. Id. at page 19. As to the question of how the Plaintiff could still say, in depositions, that she did nothing wrong, while at the same time claim she was negligent while acting as an agent for Ambros, her attorney said, "I mean, what is she going to say?" Id.

In her written Opposition to the Motion, Plaintiff states that, "After the concert ended, Mr. Boudreau [the decedent] was invited to be transported to his vehicle by an Ambros/Shimbros employee", referring, of course, to the wife (who is also the Plaintiff and the marketing manager for Ambros). See Aioi, Plaintiff's Opposition to Defendant's Motion For Summary Judgment, (hereinafter the "Opposition") at page 2, attached as Exhibit E. In the Opposition the Plaintiff also states, "Ambros Marketing Manager was also a negligent party and the proximate cause of the concert goer's death." Id. at page 10. Again, they are speaking of the Plaintiff, the Ambros Marketing Manager, Ms. Truong.

Because the Plaintiff is a party to the other case and will have an opportunity to fully adjudicate her claims of admitted negligence, collateral estoppel should ultimately apply to her admissions if they prevail in that case. D'Ambra v. United States, 396 F. Supp. 1180 (D.R.I. 1973). The court in D'Ambra found that the defendant in that case was barred from re-litigating on the issue of her negligence. The issue was identical to the one in the prior proceeding and she had "enjoyed full opportunity to litigate these issues."

It would be a mockery to allow the Plaintiff to argue in that court that she was negligent in the actions that lead to the accident, and then subsequently argue, in this Court, that she was not negligent. She previously admitted causing her husband's death, now she wants to come to Federal Court to deny it and blame the United States.

## VI.  CONTRIBUTORY NEGLIGENCE OF THE PLAINTIFF AND THE DECEASED

Guam's law of "contributory negligence", applied as a modified comparative negligence, 18 G.C.A. § 90108, states that if the negligence of "any person or his legal representative" is "as great as" the defendant's negligence, there can be no recovery. Plaintiff's negligence in the events that led to the unfortunate accident is clearly paramount. She placed her inebriated husband on the back of a golf cart that is not designed for people, consumed alcohol and drove with more than two passengers. She then proceeded to drive the cart without regard to his safety. In the parallel proceeding in the lower court, Plaintiff has argued that her own negligence was the proximate cause.

Mr. Boudreau's decision to become severely drunk was an important proximate cause of his death. See also Duenas v. Yama's Co., Inc., 1991 WL 255834 (D. Guam A.D.) (the Appellate Division found that under Guam's "Contributory Negligence" law, plaintiff's intoxication of .254 at the time of the accident barred his recovery in tort from the defendant).[1]

Under Guam's substantive law, "Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was *not as great as* the negligence of the person against whom recovery is sought." 18 G.C.A. § 90108. That is, if a plaintiff's negligence is equal to or greater than the defendant's, there is no recovery under Guam law. Here, Plaintiff's negligence was the major cause of Boudreau's death, and thus her negligence is at least 50% (or "as great as" that of the defendant's), so therefore, there is no recovery under Guam law. Additionally, Guam law requires that her negligence be added to that of her severely inebriated husband's. That is far greater than 50%. This Court's application of Guam's law of

---

[1] The Court interpolated the blood alcohol content at the time of the testing back to the time of the accident. In the instant case, decedent's alcohol content at the time of testing was .2258. No effort was made to interpolate the BAC back to the time he fell off the cart.

contributory negligence (which is actually a modified comparative negligence) results in no possibility of recovery for the Plaintiff.

## VII. CONCLUSION

The United States will present witnesses to show that it regularly inspected its grounds, particularly before the concert on April 2, 2005, and that no hazards existed to its knowledge. Witnesses will be presented who saw the decedent in an extremely intoxicated condition. Evidence will show that Mr. Boudreau's Blood Alcohol Content was at least .2258 at the time of the accident. Plaintiff was told not to place people on the back, hanging on to the moving cart. The instructions permanently affixed to the cart clearly stated that the cart should not be driven under the influence of alcohol. There was no negligent act or omission on the part of a federal employee that proximately caused the accident. To the contrary, all negligent acts were committed by the Plaintiff and Mr. Boudreau. An application of the laws of Guam, in the manner required by the FTCA, will result in a finding of no liability on the part of the United States for the unfortunate accident that caused the death of Plaintiff's husband.

RESPECTFULLY SUBMITTED: this 25TH day of August, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

_____
MIKEL W. SCHWAB
Assistant U.S. Attorney
JESSICA F. CRUZ
Assistant U.S. Attorney

JEANNE A. DENNIS, et al.,

     Plaintiffs,

  vs.

UNITED STATES OF AMERICA,

     Defendant.

Civil Case No. 88-00042

MEMORANDUM OPINION

---

   This matter was tried before the Court from July 23, 1990 to July 26, 1990.  Now having considered all of the evidence and argument presented at trial, the Court issues the following memorandum opinion:

   For the reasons discussed below, defendant's motion for dismissal pursuant to Fed. R. Civ. P. 41 is denied, and judgment is hereby rendered in favor of defendant United States of America, and plaintiffs shall take nothing by way of this action.  Each side shall bear their own costs.  Defendant shall prepare Findings of Fact and Conclusions of Law in accordance with Local Rule 260-3, and the Judgment in accordance with Local Rule 260-4.  These documents shall be filed with the clerk of this Court no later than 9:00 a.m. on August 3, 1990.

///



# I.

It is well established that a landowner has a duty to exercise ordinary care to keep its premises in reasonably safe condition. Here, the parties agree that the land on which Ms. Dennis was injured is owned by the United States.

Plaintiffs assert the United States breached its duty as a landowner in two respects. First, plaintiffs assert the United States was guilty of negligence at the time the pole at issue was removed in that the United States either improperly removed the pole or allowed the pole to be removed improperly. Second, plaintiffs assert that at the time of the accident the United States was on constructive notice that the hole existed and was dangerous.

# II.

With respect to constructive notice, a landowner is on constructive notice of a dangerous condition on its land when the condition has existed for a period of time and would have been discovered by reasonable inspection of the land. 50 California Jurisprudence 3d, Premises Liability §§ 6,7 ("Lack of actual knowledge is no defense, if there was an opportunity to inspect, and inspection would have revealed the dangerous situation. ... But the possessor of property is not liable for an injury resulting from a defect that a reasonable inspection

2

would not have disclosed. ... The length of time that has elapsed between the existence of a particular danger and an accident caused by that danger has some bearing on the determination of whether the possessor of the premises failed in his duty to exercise reasonable care to discover the danger and remove it."); Hogge v. United States, 354 F.Supp. 429, 432 (E.D.Va. 1972) ("In order to hold the owner of property liable for injury sustained by an invitee due to the unsafe condition of the premises, it must be shown that the ... unsafe condition ... existed for such a length of time as to make it the owner's duty in the exercise of ordinary care to have discovered it.").

Here, plaintiffs offered the following evidence. Mayor Frank Portusach testified that the pole was removed in 1976 after being broken during typhoon Pamela, and that he stumbled in the hole approximately one year later in 1977. Gabriella Ficke testified that she fell in the hole while jogging by the area sometime between 1983 and October of 1984. Mr. Sullivan testified that although the hole in which Ms. Dennis fell was concealed by grass and not visible, other holes existed inside the Naval Hospital fence and were not concealed by grass but rather were open and visible.

In response, the United States offered evidence that the area in question was the subject of two types of inspections, and that no holes were discovered during these inspections. First, Jess Almoguera, a Quality Assurance Evaluator for the Naval agency in charge of the Naval Hospital

3

grounds, testified that part of his job was to periodically drive by the area to make sure the grass was cut and to identify any safety hazards. Mr. Almoguera authenticated documents which established that he made several such drive-by inspections shortly before Ms. Dennis' fall. Mr. Almoguera also testified that the contractors who cut the grass were instructed to and sometimes did identify safety hazards they came across while mowing the grass. Plaintiffs also called Vince Santos, a supervisor in the Facilities Management Department of the Naval Hospital, who testified that the area in question was the subject of an Annual Inspection consisting of either drive-by or walk-by inspections, but that he did not participate in those inspections. Mr. Santos also testified that the government invited notification of safety hazards in this and other areas by way of Form No. 5100/4, telephone calls, or in-person reports. Mr. Almoguera and Mr. Santos both testified that no holes were ever discovered or reported prior to Ms. Dennis' fall.

The Court finds that the United States did not have constructive notice of the hole for two reasons. First, plaintiffs emphasize that the hole in which Ms. Dennis fell was concealed by grass and not visible. Plaintiffs presumably make this emphasis to avoid the defense that Ms. Dennis was contributorily negligent. Such being the case, the Court finds that the United States could not have discovered the hole upon reasonable inspection. As stated in Hogge, supra at 433, which

4

involved a fall in a hole created by a decayed pier or bulkhead piling, which hole was concealed by grass and not easily discoverable, "Under the facts of this case the United States was not negligent toward plaintiff. It neither knew of the defect, nor with the requisite attentiveness could have discovered it in time to save plaintiff from the accident and injury. In this case, an opposite finding would convict plaintiff of contributory negligence, which is a bar to his right of recovery. If the United States was negligent in not observing or locating the hole, then plaintiff likewise was. [cite]. That is to say, if the hole was not covered by grass but open and obvious, there would have been no duty to warn the plaintiff of the existence of the condition." With respect to the holes inside the Naval Hospital fence, no evidence was submitted as to when, why or how the poles that created those holes were removed. In addition, the Court finds that such holes, like the hole in which Ms. Dennis fell, were concealed by grass and could not have been discovered by the United States upon reasonable inspection. Furthermore, even if holes inside the fence could have been discovered, such would not lead to the conclusion that the hole outside the fence should have been discovered.

Second, the evidence shows that the United States did conduct reasonable inspections of the land in question but did not discover the holes and never received notice of the holes. Although plaintiffs attempted to call into question whether Mr.

5

Almoguera inspected for safety hazards or merely for whether the grass was mowed properly, the Court finds that the preponderance of the evidence shows that Mr. Almoguera inspected *inter alia* for safety hazards. Similarly, although plaintiffs attempted to call into question the function and method of the Annual Inspection about which Mr. Santos testified, the Court finds that the preponderance of the evidence shows that the Annual Inspections were intended and designed to identify safety hazards. Such inspections satisfy the United States' duty as a landowner.

## III.

Plaintiffs' alternate theory of liability is that the United States is guilty of negligence in that it either improperly removed the pole at issue or allowed the pole to be removed improperly.

The evidence at trial was inconclusive as to who removed the pole, i.e. whether the pole was removed by the government of Guam, the United States, both, or some other entity. However, plaintiff established other pertinent facts. Joe Manibusan, who has been employed by the Public Utility Agency of Guam and/or the Guam Power Authority since the late 1950s, testified that the pole at issue was in place since at least the late 1950s or early 1960s. Mayor Frank Portusach testified that the pole was broken when a tree fell on it during

6

typhoon Pamela in 1976, and removed shortly thereafter.  As
stated above, it is not clear who removed the pole; it is clear,
however, that the pole was removed by cutting it off at ground
level and leaving the remainder in the ground.  George Wusstig,
a former employee of the Public Utility Authority of Guam and of
Pacific Gas & Electric in California and a current employee of
the Guam Power Authority, testified that the proper manner in
which to remove a pole is to remove the entire pole, including
the portion in the ground, and fill the hole with dirt and/or
gravel, but not to merely cut the pole off at ground level.
Plaintiffs' exhibit 51, entitled "Restoration and Hardening of
Guam's Military Telephone and Electric Power Systems, Naval and
Air Force Facilities, Guam, M.I.," which sets forth certain
military specifications and requirements with respect to work
that was to be performed for the military by contractors (which
work was unrelated to the instant action), provides in paragraph
2.3, "Poles:  Poles indicated to be removed shall be removed
completely including that portion below grade.  The Contractor
will not be allowed to cut poles off at ground level."

Plaintiffs argue that the United States was negligent
in that it either removed the pole at issue improperly or
allowed the pole to be removed improperly.  Plaintiffs argue
that the pole was on the United States' land since at least the
late 1950s, and that since the pole was on the United States'
land for at least approximately 20 years and was suddenly
removed in 1976, the United States should have ascertained that

7

the pole was removed properly.

For the reasons discussed in section II above, this argument is without merit. The pole was removed at ground level; no stump was protruding above the ground. Such being the case, the fact that the pole was not removed completely could not have been discovered by reasonable inspection. Indeed, the United States did conduct reasonable inspections of the area in question and did not discover this fact. To hold the United States liable for failing to ascertain that the pole was removed properly in this case would be akin to holding the United States strictly liable for injuries occurring on its land. Such a strict liability theory is not permitted by the Federal Torts Claims Act. Accordingly, the Court finds that the United States was not negligent in failing to ascertain whether the pole at issue was removed in a proper manner.

IT IS SO ORDERED.

DATED:  July 31, 1990.

RONALD S.W. LEW
United States District Judge

8

1

**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
2  HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4
3  FACSIMILE: (671) 472-2601

4  *Attorneys for the Estate of Roland*
*Anthony Boudreau, Deceased*

5

6

7                          IN THE SUPERIOR COURT OF GUAM

8                                             **CV** 1082-06

9  CASSANDRA CHAU TRUONG,          )    CIVIL CASE NO. CV_____
   Administratrix of the Estate of  )
10 ROLAND ANTHONY BOUDREAU,        )
   deceased,                        )
11                                   )
              Plaintiff,             )
12                                   )
          vs.                        )    **COMPLAINT FOR DAMAGES**
13                                   )    **FOR WRONGFUL DEATH**
   AIOI INSURANCE COMPANY, LTD.,    )
14                                   )
              Defendant.            )
15

16

17       1.     This Court has jurisdiction of this action pursuant to 7 G.C.A. § 3105, *et seq.*

18       2.     Plaintiff is the duly appointed, qualified and acting Personal Representative

19 of the *Estate of Roland Anthony Boudreau, Deceased*, having been appointed by the Superior Court

20 of Guam in Probate Case No. PR0151-05.

21       3.     Plaintiff brings this action as specified in § 377 of the Guam Code of Civil

22 Procedure (now codified at 7 G.C.A. § 12109) on behalf of the surviving heirs of Roland Anthony

23 Boudreau, deceased (hereinafter referred to as the "Decedent").

GOVERNMENT
EXHIBIT
**B**

4. The only heirs at law of the Decedent, and their relationships to the Decedent, are as follows:

    a. Cassandra Chau Truong, spouse; and

    b. Joshua Boudreau Chapman, son

5. At all times herein mentioned, there was in effect a policy of insurance, by the terms of which Defendant AIOI Insurance Company, Ltd. agreed to pay any loss by reason of liability imposed on Ambros, Inc., d.b.a. Shimbros Productions ("Shimbros"), for damages because of injuries to any persons as a result of any negligence by Shimbros, with respect to all damages, including damages for care and loss of service arising out of bodily injury, including death at any time resulting therefrom sustained by one or more persons, which may occur to any person during attendance at concerts sponsored by Shimbros. Plaintiff brings this action against Defendant pursuant to Guam's direct action statute, 22 G.C.A. § 18305.

6. On or about April 2, 2005, the Decedent attended a *Three Doors Down* concert at *Polaris Point* in Guam, which concert was sponsored by Shimbros.

7. The Decedent was an invited guest of the VIP tour marketed by Shimbros, which began at the *Hard Rock Café* in Guam..

8. Shimbros provided Decedent VIP bus transportation from the pre-concert party at the *Hard Rock Café* Guam down to *Polaris Point*.

9. Shimbros utilized golf carts to transport the VIP guests around the *Polaris Point* premises.

10. At about 7:00 o'clock p.m. on April 2, 2005, one of the employees of Shimbros was transporting Decedent and another employee of Shimbros in a golf cart to Decedent's car located at *Polaris Point* so that he could drive home. The Decedent was standing on the rear part

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE (671) 477-9891-4

-2-

1  of the golf cart where golf bags are ordinarily carried.

2      11.     During the transportation of the Decedent, the golf cart hit a bump at *Polaris*

3  *Point*, which caused the Decedent to fall from the golf cart, where he violently struck his head on

4  the pavement and was severely injured.

5      12.     The Decedent was taken to the U.S. Naval Hospital on Guam on the same day

6  but died one day later, on April 3, 2005 from the injuries received from said accident.

7      13.     Shimbros, and its agents and employees, negligently and carelessly allowed

8  its employees to operate said golf carts without proper instructions and negligently operated the golf

9  cart, thereby causing the Decedent to fall from the golf cart and, thereby proximately causing the

10  Decedent's death.

11      14.     As a direct and proximate result of said negligence, and the injuries caused

12  thereby, Roland Anthony Boudreau died.

13      15.     Immediately prior to his death, the Decedent was thirty-six (36) years old, was

14  married to Cassandra Chau Truong, and had one minor child and had a life expectancy of forty-one

15  (41) more years. The Decedent was a faithful and dutiful husband to his wife, and was a dutiful

16  father to his only child, Joshua Boudreau Chapman.

17      16.     As a proximate result of the negligence of Shimbros Productions, and its

18  agents, employees and servants, and the death of said Decedent, the Decedent's wife and son have

19  been deprived of the consortium, society, comfort, protection, services and support, parental advice,

20  care, education and guidance of the Decedent, all to their damage in the sum of One Million Dollars

21  ($1,000,000).

22  ///

23  ///

Case 1:06-cv-00022     Document 29     Filed 08/25/2008     Page 23 of 24

WHEREFORE, Plaintiff prays for judgment as follows:

1. For damages in the sum of One Million Dollars ($1,000,000);

2. For attorney's fees;

3. For costs of suit herein incurred; and

4. For such other and further relief as the Court may deem proper.

DATED at Hagåtña, Guam, on August 29, 2006.

TEKER TORRES & TEKER, P.C.

By _____

LAWRENCE J. TEKER, ESQ., Attorneys for
the Estate of Roland Anthony Boudreau, Deceased

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff demands a trial by jury of twelve (12) persons in this action.

DATED at Hagåtña, Guam, on August 29, 2006.

TEKER TORRES & TEKER, P.C.

By _____

LAWRENCE J. TEKER, ESQ., Attorneys for
the Estate of Roland Anthony Boudreau, Deceased

LJT:cs
PLDGS:TRUONG, CASSANDRA-INSURANCE:001

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGATNA, GUAM 96910
TELEPHONE: (671) 477-9891-4

-4-